FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 APR 24 PM

U.S. DISTRICT COURT
N.D. OF ALABAMA

ARETHA L. HURBERT,            )
                              )
      Plaintiff,              )
                              )      CIVIL ACTION NO.
v.                            )
                              )      99-AR-1666-S
MIDTOWN RESTAURANTS, d/b/a    )
BURGER KING OF IRONDALE       )
                              )
      Defendant.              )

ENTERED

APR 24 2000

## MEMORANDUM OPINION

Plaintiff, Aretha Hurbert ("Hurbert"), alleges that defendant, Midtown Restaurants ("Midtown"), discriminated against her on the basis of race in violation of Title VII and 42 U.S.C. § 1981 when a manager suggested that she resign and when she was terminated by her supervisor.  For the reasons set forth below, the court will grant Midtown's motion as to Hurbert's first claim but will deny its motion as to Hurbert's termination claim.  The court will also deny Midtown's motion to the extent that it addresses damages issues.

### Procedural History of Midtown's Motion for Summary Judgment

Originally, this motion was to come under submission on April 10, 2000, with plaintiff's opposition due on April 7, and defendant's reply due on April 10.  Plaintiff filed a motion for a



one week extension, which was granted.  Thus, the dates were moved to April 14 and April 17 respectively.  On April 17, the court received a faxed motion for an extension from defendant.  Due to the fact that defendant did not receive plaintiff's response until the morning of April 17 and the fact that lead counsel for defendant was in Washington, D.C. at the time, the court granted defendant's motion and thereby extended the deadline to April 19.  Pursuant to this judge's policy that all motions for extensions must be in writing and filed with the clerk's office, the court filed the faxed copy in the clerk's office for defendant.  Defendant did file the original of this motion on April 20, but the court's docket clerk did not docket it because the court had already filed and docketed the faxed motion.

On April 20, the court received a faxed copy of defendant's reply, along with defendant's motion to strike portions of plaintiff's declaration.  Originals of the reply and of the motion to strike were filed on April 21, 2000.

The court notes that the faxed reply was a day late and that the defendant had not requested another extension.  The court points out that it is under no obligation to, and is not responsible for, filing pleadings for parties.  Faxes are not official filings.  Thus, the court will not consider defendant's

reply.[1]  As for the motion to strike, the court will keep that
motion under advisement and will deem it to be a motion in limine.

## Pertinent Disputed and Undisputed Facts

Hurbert began working for Midtown in August of 1997 at the
Burger King on Lakeshore Drive.  She started as a crew member and
was eventually promoted to the position of shift supervisor.
District Manager Steve Hamner ("Hamner"), approved the promotion.
In December of 1997, Hurbert started working as a shift supervisor
for the Burger King in Irondale.  Hamner hired Hurbert in the
Irondale store because he believed that she was capable of doing
the job.  Hamner Depo. at 33.  At the time, Scott Durden ("Durden")
was the general manager at the Irondale store.

After working at the Irondale store for 2 or 3 months, Hurbert
was promoted to the position of assistant manager.  In or around
May of 1998, Durden was terminated.  Kim Temple ("Temple"), who is
a white female, was selected to replace Durden.

As assistant manager, Hurbert's duties included running a
shift, training employees under her supervision, overseeing and
improving her crew's customer service skills, and filling out daily
labor control reports.  She was also responsible for food control,

---

[1]  The court notes that its decision would be the same even if it had
considered defendant's reply.

3

fool quality, and cleanliness. Hurbert also had the authority to hire, fire, and discipline employees.

Midtown had a progressive discipline policy in effect at that time in the Irondale store. Hamner Depo. at 62. The policy, although not mandatory, suggested that an employee receive a verbal warning first and then a written warning before being suspended or terminated. Temple admitted that Midtown had this policy but stated that she didn't use it with Hurbert because she was trying to help her. Temple Depo. at 26.

Temple claims that Hurbert had numerous problems with job performance. For example, Temple claims that Hurbert submitted incomplete reports, often had mistakes on her reports, and that she seemed unwilling to learn from Temple or to train employees under her supervision. Temple says that, despite guidance, verbal reprimands and numerous "second chances," Hurbert continued to perform poorly and failed to improve. Temple also says that she experienced insubordination from Hurbert and a lack of response to her directions, instructions, or criticism.

In late June of 1998, Hurbert claims that she picked up an extension telephone in the restaurant and overheard Temple say to someone on the other end that she was "going to get rid of this black bitch." Hurbert claims that she immediately hung up the

4

phone after hearing the comment.  Hurbert alleges that Temple was referring to her.  At the time, there were no other black females in management at the Irondale store, but there were several black female hourly employees.

Around the first of July, 1998, Hurbert complained to Hamner about Temple's close supervision, saying that Temple was "riding her hard" or, in essence, that Temple was pushing her harder than other employees.  Hurbert claims that Hamner said something to the effect of, "Why don't you just go ahead and resign if you feel that way."  Hurbert Depo. at 118.

Temple fired Hurbert on July 9, 1998.  Temple claims that Hurbert was late for work and that in light of her numerous problems, she decided to fire her.  Temple claims that she had previously given Hurbert several verbal warnings about her poor work performance and attitude.  Hurbert disputes that she received any verbal warnings and points out that prior to her termination, she was never formally disciplined in any way.  In fact, there is no documentation of any kind regarding warnings or discipline for Hurbert at any time by anyone at Midtown before her termination.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a genuine issue of material fact, not merely some factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a jury could return a verdict for plaintiff. If so, defendant's motion for summary judgment must be denied. If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### 1. Hammer's Suggestion That Hurbert Resign

In her opposition to Midtown's motion for summary judgment, Hurbert did not address Midtown's challenge to her claim that seeking her resignation was an actionable act of discrimination.

6

The court speculates that Hurbert did not address this claim for a reason.[2]   Regardless, the Eleventh Circuit has made it clear that "In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' . . . Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995)(citations omitted). <u>See also</u> <u>Harris v. Warehouse Services, Inc.</u>, 77 F. Supp. 2d 1240, 1248 (M.D. Ala. 1999)(citing <u>Resolution Trust Corp.</u> and holding same).

Thus, to the extent that Hurbert alleged in her complaint that Hamner's suggestion that she resign is an instance of racial discrimination, the court will treat that claim as abandoned.[3]

## 2.  Hurbert's Termination Claim

As to Hurbert's termination claim, the court will deny Midtown's motion for summary judgment. However, in order to clear up any confusion at trial, the court will discuss whether the statement allegedly made by Temple constitutes direct evidence of

---

[2] The court is not sure that Hurbert's complaint alleges anything other than wrongful termination. However, because Midtown's motion for summary judgment addresses Hamner's suggestion that Hurbert resign as an independent instance of discrimination, the court will also treat it as a separate claim.

[3] Even if Hurbert had not abandoned the claim, the court would still grant summary judgment as to that issue because Hamner's suggestion that Hurbert resign is not an adverse employment action.

discrimination.

As the Eleventh Circuit has held repeatedly, direct evidence is evidence which, if believed by the jury, proves the existence of a fact in issue without inference or presumption. See Burrell v. Board of Trustees of Georgia Military College, 125 F.3d 1390, 1393 (11th Cir. 1997); Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990); and Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).  The Eleventh Circuit has also explained that "[S]tatements that are open to more than one interpretation do not constitute direct evidence of racial discrimination." Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998)(citing Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1083 n. 2 (11th Cir. 1996)).

Hurbert argues that because she was the only member of management who was black and female and because she was in fact fired two weeks later, Temple's alleged statement that "I am going to get rid of this black bitch" is direct evidence.  Midtown argues that because there were other hourly employees who were black females, the statement is not direct evidence because one still has to draw the inference that Temple was referring to **plaintiff** in particular.

Assuming for purposes of summary judgment, as the court must,

8

that Temple made the statement, it is direct evidence in the sense that Temple was referring to firing a black female employee; the statement is unambiguous about that much.  However, the statement is ambiguous as to whether Temple was referring to Hurbert in particular.  Certainly, Hurbert is one of the possibilities, but the statement does not inescapably lead to the conclusion that Temple was going to fire Hurbert.  Furthermore, it is not necessarily true that referring to a person's skin color is evidence of discriminatory animus.  Therefore, the court finds that the statement is not direct evidence of discrimination.[4]

Otherwise, the court finds that Hurbert has produced sufficient evidence to raise genuine issues of material fact as to her termination claim.

As for the related damages issues raised by Midtown in its motion for summary judgment, the court believes that those issues are best reserved for the jury or for Rule 50 motions.  Therefore, the court will deny Midtown's motion for summary judgment with regard to any damages which Hurbert is claiming.

---

[4] Hurbert is, of course, free to offer the statement as circumstantial evidence of discriminatory animus.

9

## Conclusion

A separate and appropriate order will be entered.

DONE this _24th_ day of April, 2000.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE